Henry E. Leinen )
PO Box EE )
Pacific Grove, CA 93950-0289 )
(831)655-1948 Hleinen@aol.com )
    Plaintiff, *In Pro Se* )
 )
        VS. )
 )
Debra V. Crawford, Esq. )
PO Box 373 )
Carmel, CA 93921-0373 )
    Defendant, *In Pro Se* )
 )
Superior Court Judge )
Susan M. Dauphine )
    Defendant )

**Filed**

FEB 1 4 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Case Number: C07 03274HRL

C/HRL

United States District Court
Northern District of California
280 South First St.
San Jose CA 95101

Civil Rights Case

**Amended Complaint**

This amendment to the original complaint pursuant to

Federal Rule 15 names Susan M. Dauphine, a State Actor as a co-

defendant for the reasons as annotated below in issues 1-3.

1. On November 17, 2005 at the time of the first hearing of

the dissolution case to which I was a party acting in *Pro Se*, I

was disallowed by defendant, Dauphine to make oral motions as

allowed under the California Rules of Civil Procedure; Rule

3.520, "Motions filed in the trial court". The first motion

would have been to Stay the Temporary Restraining Order that I

had been handed under seal by petitioner's lawyer, Debra V.

Crawford until such time as an examination could be completed and its finding presented to the court as codified at California Family Code §6389, I also had a copy of the medical examination document defendant Crawford referred to as a "suicidal note", **(EX 1 A-B)** to which defendant Dauphine refused to allow me to present or object to defendant Crawford's statement concerning suicide. As to the second motion, I would have moved to disqualify Susan M. Dauphine from hearing the case pursuant to §170.1(8)(A)(iii) California Code of Civil Procedure, as I had a fiduciary relationship with her. Several years prior, I met with her at her residence some years before after she had suffered a burglary. I was the license holder and President of Consolidated Security Systems, Inc. After interviewing her I engineered an electronic protection system (burglar alarm) for her residence. Upon completion of that installation, I entered into an additional contract with her spouse for a similar alarm system at his place of business in Monterey.

2. Defendant Dauphine's act of disallowing me to speak while in court on November 17, 2005 violated the California Code of Judicial Ethics Canon 3(B) (7)," A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, full right to be heard according to law."

3. For the reasons cited above and as evidenced in the transcript of proceedings of November 17, 2005 **(EX 2 A-H)** I

amend my original complaint annexed below and name Susan M. Dauphine as a co-defendant.

**4.** The Complaint states a federal question; may the State deprive a <u>Federal law enforcement officer</u> the rights afforded <u>State law enforcement officers</u>? See California Family Code §6389. Plaintiff's authority and rights to carry firearms are codified at 19USC1589a. These rights were seized by State actors; specifically the employees of the Pacific Grove Police Department, who received the firearms pursuant to the TRO issued by Superior Court Judge Susan M. Dauphine.  The TRO did address the issue that Plaintiff was a <u>Federal Law Enforcement Officer</u> yet Family Code §6389 was not applied, thus denying Plaintiff additional rights and protections afforded <u>State Law Enforcement Officers</u>, thus denying plaintiff equal protection under State law, and the 14th Amendment of the Constitution.

**5.** Defendant, Crawford negligently failed to follow California Rules of Civil Procedure sections 415.10 through 416.50 when she failed to serve upon or give notice to Plaintiff a Temporary Restraining Order, (TRO) which was quashed by the court upon Plaintiff's response once Plaintiff was served and responded to the TRO.

**6.** Defendant, Crawford negligently failed to give notice to Plaintiff of the TRO by personal service, mail, or to leave a copy of the TRO at Plaintiff's residence. At all times Defendant

1  held herself out to be competent in the area of family law which

2  is her exclusive specialty.

3

4      **7.** Defendant, Crawford's negligent failure to properly

5  serve or give notice of the TRO to Plaintiff resulted in the

6  unlawful "seizure" of the Plaintiff's ability to obtain

7  employment when he applied for work with the County of Monterey

8  California as a Park Ranger. A Park Ranger earns an annual

9  salary (excluding overtime and cost of living increases) of

10  $30432.00 to $43080.00, a violation of Plaintiff's

11  Constitutional 5th and 14th Amendment rights.

12

13      **8.** Defendant, Crawford renewed the TRO on two subsequent

14  occasions and negligently failed to serve, mail, or leave a copy

15  of each new TRO at Plaintiff's residence as required under

16  California Rules of Civil Procedure sections 415.10 through

17  416.50 From October 1989 to the present Plaintiff continually,

18  openly, and notoriously resided at 1212 Lawton St. Pacific

19  Grove, California.

20

21      **9.** Plaintiff was denied due process of law for twelve weeks

22  because the TRO had been filed and placed into the National

23  Crime Information Center (NCIC) via the California Law

24  Enforcement Teletype System (CLETS) without proper service or

25  notice to Plaintiff until November 17, 2005. The negligent

26  failure of proper notice violated California Code of Civil

27  Procedures 415.10 through 416.50 as well as Plaintiff's

28  Constitutional Rights codified at 42 U.S.C. § 1981(c).

**9.** Defendant's negligent failure to give proper notice to Plaintiff violated California Code of Civil Procedures as well as Plaintiff's Constitutional Rights under the Fifth Amendment's unlawful seizure language and as annotated at 28 U.S.C. Appendix Rule 4 (e) and the Fourteenth Amendment's due process language as codified at 42 U.S.C. § 1983.

**10.** On November 17, 2005 while in open court and in the presence of numerous people, Defendant defamed Plaintiff when she slandered Plaintiff by stating Plaintiff had sent an electronic message to her client that was a "Suicide Note". Defendant's statement is untrue and was made with malice by the use of scienter. This statement was then published as part of the court record. Plaintiff suffered loss of reputation in the community due to the Defendant's statement concerning suicide. Defendant can not raise the affirmative defense of *litigation privilege* as this defense is specifically prohibited as codified at California Civil Code § 47(b)(1).

**11.** Defendant was required to exercise the same legal skill as a reasonable competent attorney and to use reasonable care in producing, filing, supervising, serving, and properly notifying Plaintiff of the existence of the TRO and its subsequent renewals by complying with all California laws and codes in regards the issuance of legal process, specifically the TRO. The negligent failure to notify Plaintiff of the TRO substantially harmed Plaintiff's ability to obtain employment.

**12.** But for the fact that Plaintiff did not receive notice of the TRO at any time, Plaintiff was unable to obtain employment within his career field (law enforcement) during the time the TRO was active. Law enforcement occupations require that applicants pass a background investigation that includes a check of the NCIC. In the event that Plaintiff had been properly served notice of such TRO, he would have delayed his application until the TRO was quashed by the court upon receipt of my written response.

**13.** Plaintiff prays for relief in the amount of $500,000.00 based on the loss of wages that Plaintiff would have earned from the date of hire to Plaintiff's sixty sixth birthday, at which time Plaintiff would be eligible for Social Security.

**14.** Plaintiff prays for prejudgment and post judgment costs as well as actual and punitive damages and other relief as deemed appropriate.

**15. DEMAND FOR JURY TRIAL.** Plaintiff demands a jury trial as guaranteed by AMENDMENT VII of the Constitution of the United Sates of America.

Dated this February 12, 2008

*Henry E. Leinen*

Henry E. Leinen, Plaintiff

ULTRA LIFE
5267 Warner Avenue  #170
Huntington Beach, CA  92649


March 6, 2006


Henry Leinen
P.O. Box EE
Pacific Grove, CA  93950



Dear Participant:

      Thank you for participating in our screening program.
ENCLOSED ARE YOUR WRITTEN RESULTS.  Early detection of signs and
symptoms with lifestyle modification can reduced your risk of
heart attack, stroke, vascular and abdominal organ
abnormalities.

      We hope that the results are of benefit to you and we
encourage you to share this information with your primary care
physician.  Please let other people know about this unique and
powerful preventative program. It just may save someone's life.

      Thank you again for your participation. Should you have any
questions as to the screening and/or screening results, Please
feel free to contact us at
1-800-990-5721.

Sincerely,


Thomas Johnson, M.D.
Medical Director



Attention physicians:  This is a screening procedure to detect
early signs, symptoms and presence of possible plaque build-up,
hemodynamic and organ tissue changes and is not meant to used in
place of a comprehensive medical exam.  For positive result
findings, a comprehensive medical exam is strongly recommended.

enclosures


EX 1-A

ULTRA-LIFE, INC.                          714-846-9614
5267 Warner Avenue                        800-990-5721
Suite 170
Huntington Beach, CA 92649


March 6, 2006


Name: Henry Leinen


ABDOMINAL ULTRASOUND                      Testing date:  11-16-2005

     A high frequency, low intensity ultrasound procedure was performed
to visualize your abdomen and various organs within the abdomen.
This test clearly images each organ using ultrasound to detect any
abnormality and/or masses (growths, lesions, and/or cysts).

     Upon your receipt of the results of the test, you are strongly urged
to consult a physician if there is any evidence of abnormality and/or if
you have any persistent symptoms that have not been attributed to
information obtained from this test.

YOUR INTERPRETED RESULTS ARE AS FOLLOWS:

LIVER:            Normal
GALLBLADDER:      Abnormal
PANCREAS:         Normal
SPLEEN:           Normal
AORTA:            Normal
KIDNEYS:          Abnormal
COMMON DUCT:      Normal
ABDOMEN:          Normal

COMMENTS:
  Gallbladder: There appear to be echogenic structures, resembling small
  gallstones, seen.

  Left kidney: There appears to be an unechoic structure, resembling a
  cyst, seen measuring approximately 51.2 mm. x 52.1 mm.
  RECOMMENDATIONS:
  1. M.D. consultation.
  2. Complete blood test.


                              _____
                              Thomas Johnson, M.D.


                                                    EX 1-B

1      IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

2             IN AND FOR THE COUNTY OF MONTEREY

3

4    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

     KAREN SHAFFER LEINEN,

5

          Petitioner

6

       and                              No. DR39733

7

     HENRY E. LEINEN,

8

          Respondent.

9    ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾

10

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                 November 17, 2005

16     BEFORE THE HONORABLE SUSAN M. DAUPHINE, JUDGE

17

18

19

20   APPEARANCES:

21   For the Petitioner:      DEBRA CRAWFORD
                              Attorney at Law
22

23   For the Respondent:      In Propria Persona

24

25

26

27

28

                    ─MARJORY LORD   CSR 2487─

                                        EX 2-A

```
 1   November 17, 2005                         9:05 a.m.
 2                    P R O C E E D I N G S
 3            THE COURT:  Start with the case of Sharon
 4   Shaffer Leinen and Henry Leinen.
 5            MS. CRAWFORD:  Good morning, your Honor.
 6   Debra Vaniman Crawford appearing for Karen Shaffer
 7   Leinen.  Mr. Leinen is not here yet.  But maybe we could
 8   trial it.
 9            THE COURT:  We can trail it.  I do want to
10   let you know, I will reiterate this.  Unfortunately the
11   clerks were unable to find all the paper work in this
12   matter.  And so I may have to ask for a continuance.  I
13   don't know if you -- I'm sure you must have the order to
14   show cause.  I have --
15            MS. CRAWFORD:  On the domestic violence or
16   on the other motion?
17            THE COURT:  Both.
18            MS. CRAWFORD:  On both.  How interesting.
19            THE COURT:  The motions were for injunctive
20   relief and spousal support were not found by the clerks.
21   I believe I do have the set, they attempted to contact
22   you to receive copies of those.  But apparently --
23            MS. CRAWFORD:  Wasn't before I left
24   yesterday.
25            THE COURT:  Right.  I apologize for that.
26   But I will recall the case.
27            MS. CRAWFORD:  Thank you, your Honor.
28            THE COURT:  Thank you.
```

—MARJORY LORD  CSR 2487—

EX 2-B

1          (Recess.)

2          THE COURT:  Calling the matter of Karen

3    Shaffer Leinen and Henry E. Leinen.

4          MS. CRAWFORD:  Good morning, your Honor.

5          THE COURT:  Good morning again.

6          MS. CRAWFORD:  Mr. Leinen has shown up.  And

7    up until today, we had not been able to have him served

8    with the domestic violence matter.  And I did serve him

9    with that this morning, and filed the proof of service

10   during the break.

11         THE COURT:  Great.  State your names for the

12   record.

13         MS. LEINEN:  Karen Shaffer Leinen.

14         MR. LEINEN:  Henry Eugene Leinen.

15         THE COURT:  You have now received a copy.

16         MR. LEINEN:  I have received a sealed

17   envelope.  I haven't been told what's inside.

18         THE COURT:  You are free to open it, sir.  I

19   would suggest you do that.

20         MR. LEINEN:  Okay.

21         THE COURT:  And we had called the case, the

22   DV case was on our calendar at nine o'clock.  You were

23   not present.  And I called it then and that file has

24   gone outside.  Since he's just receiving this, and this

25   was the file as I mentioned to you, Ms. Crawford.  And I

26   apologize that we did not have --

27         MS. CRAWFORD:  I understand, your Honor.

28         THE COURT:  Now I have just been handed up

───────── MARJORY LORD  CSR 2487 ─────────

EX 2-C

1    here a stack of documents, but I haven't had a chance to
2    review it.
3              MS. CRAWFORD:  I would like to say that I
4    did file the DV case under the DR number so there should
5    be maybe just one file.
6              THE COURT:  Okay.
7              MS. CRAWFORD:  It helps matters a little
8    bit.  But you are only missing one file, not two.
9              THE COURT:  So you now have a proof of
10   service on Mr. Leinen.
11             MS. CRAWFORD:  Yes, your Honor.
12             THE COURT:  And what I am going to suggest
13   is that he should have an opportunity to respond to the
14   proof of service.  Is there any kick out order needed at
15   this time?
16             MS. CRAWFORD:  I don't think we need it
17   right now.  The one of the major issues is the
18   harassment.  My client is a kindergarten teacher and she
19   had to give her class to somebody else yesterday and
20   showed up in my office unexpected in tears.  It's the
21   e-mails and the phone calls.  If they stop that's going
22   to solve a lot of the problems.
23             Also she received a e-mail yesterday that
24   appears to be a suicidal note.  And so I think once
25   that's a big concern, the possession of all the
26   firearms, is a very big concern.  One of the issues with
27   the house is the showability.  But we can address that
28   at a further date.  So I don't think kick out order is

EX 2-D

4

1    needed at this point.

2            THE COURT:  What I can do, Mr. Leinen, is

3    just continue the temporary orders that were put into

4    effect on a temporary basis, that's the basic

5    restraining order and stay away order --

6            MR. LEINEN:  Can I respond to this?

7            THE COURT:  -- mutual property restraints,

8    and then put this over for until the 1st of December,

9    reissue it until that date, with a temporary orders

10   remaining in effect so that you can file written

11   response.  She told me you hadn't even opened the

12   envelope and I understand you were just served today.

13   So I would just continue the temporary orders in effect

14   until that date or can make it a later date if you want,

15   but that would be the next court date available.  And

16   then you could file something.

17           MS. CRAWFORD:  The issue with that date is I

18   am the pro per adviser that day and that may deprive him

19   of an obligation, so if he would prefer to have it the

20   next week when I am not the person that --

21           THE COURT:  I appreciate that.

22           MS. CRAWFORD:  -- I am not the pro per

23   adviser.

24           MR. LEINEN:  Your Honor, can I have present

25   a document to you?

26           THE COURT:  At this point, sir, I wouldn't

27   be able to read it in court.  You need to file things,

28   and I don't mean to be rude.  But for everybody's sake,

EX 7.-E

```
 1    you can certainly go out to the clerk and file it and
 2    then I would be happy to consider it.  But what I am
 3    suggesting, because you just been served today, is that
 4    we put the matter over and Ms. Crawford mentions that
 5    she is the pro per legal adviser on the 1st.  There
 6    would be a different person present on the 8th.
 7              If you needed the services of a pro per
 8    legal adviser, I can put it over to the 8th so that we
 9    would have that person in court.  That would just be for
10    matters that come in court.  You may want to get legal
11    representation for yourself before then.  I would
12    encourage you to do that.  You are entitled to do that
13    as I'm sure you are aware.  All right?  And then you can
14    file anything that you believe the court should
15    consider.  I would ask that anything be filed in
16    response no later than December 2nd, 2005.
17              MR. LEINEN:  So what date do we --
18              THE COURT:  It would be a Thursday, at nine
19    o'clock a.m. and I would set it for December 8th, 2005,
20    if that date works for you.
21              MR. LEINEN:  Any date works fine for me,
22    your Honor.
23              THE COURT:  I will put it over then.
24              MS. CRAWFORD:  And would that be also a
25    continuance -- we have a motion on calendar and he has a
26    motion on calendar.  So there are actually three matters
27    on calendar today, just continue everything.
28              THE COURT:  Right.  We continue everything
```

—————— MARJORY LORD   CSR 2487 ——————

1   to that date and then either side can file papers

2   relating to either the OSC or the motions up until

3   December 1st, 2005, and serve the other side.  You have

4   a current address so that you can serve him by mail.

5               MS. CRAWFORD:  Yes.  He has a P. O. Box.

6   Yes.

7               THE COURT:  All right.  And the court would

8   continue the current orders in effect until December

9   8th, 2005.  Continue all the motions until that date in

10  this courtroom.

11              MR. LEINEN:  Okay.  Thank you, your Honor.

12              THE COURT:  Ms. Crawford, would you prepare

13  the order after hearing?

14              MS. CRAWFORD:  Yes, your Honor.  Thank you.

15              THE COURT:  Sir, if you want to file

16  anything, you go out to the clerk's office.

17              (Recess.)

18

19

20

21

22

23

24

25

26

27

28

—————————MARJORY LORD   CSR 2487—————————

EX 7-6

```
1

2

3    STATE OF CALIFORNIA   )
                           ) ss
4    COUNTY OF MONTEREY    )

5

6

7

8

9         I, MARJORY LORD, Certified Shorthand Reporter,

10   and Official Reporter of the Superior Court of the State

11   of California, in and for the County of Monterey, do

12   hereby certify:

13        That the foregoing pages contain a true, full and

14   correct transcript of the proceedings given and had in

15   the within-entitled matter that was reported by me at

16   the time and place mentioned and thereafter transcribed

17   under my direction into typewriting and that the same is

18   a correct transcript of the proceedings.

19

20        Dated:  February 11, 2008

21

22

23        _____

24        Marjory Lord, C.S.R.
          Cert. No. 2487
25

26

27

28
```

EX 2-H